## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## AUGUSTA DIVISION

| | | |
|---|---|---|
| **CHRISTINA ANN GRAHAM, Individually and as Anticipated Administrator of the ESTATE OF NELSON LEE GRAHAM, JR., Deceased,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | **Civil Action File No.:** |
| **v.** | ) ) | **CV 123-180** |
| **DEPUTY MADISEN EMERSON, DEPUTY KEVIN CLARKE, and DEPUTY ELVIN THOMPSON,** | ) ) ) ) ) | |
| **Defendants.** | ) ) ) | **Jury Trial Demanded** |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff CHRISTINA ANN GRAHAM, Individually and as anticipated Administrator of the Estate of NELSON LEE GRAHAM, JR., and hereby files her Complaint for Damages against the above-named Defendants, respectfully showing the Court as follows:

### Causes of Action, Parties, Jurisdiction & Venue

1.

This is a civil action pursuant to 42 U.S.C. § 1983 to redress deprivations under color of law of NELSON LEE GRAHAM, JR.'s clearly established civil rights secured by the Fourth and Fourteenth Amendments to the United States Constitution

and pursuant to Georgia's Wrongful Death Act, O.C.G.A. § 51-4-2, which establishes a claim for "the full value of the life of the decedent." Claims are hereby filed pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for civil rights violations, unreasonable use of force, deliberate indifference, substantive due process violations, and for violations of the Americans with Disability Act and Rehabilitation Act. Plaintiffs also raise state law claims as shown below.

2.

Defendants violated the constitutional rights of NELSON LEE GRAHAM, JR., deceased husband of the Plaintiff, under the United States Constitution and the laws of the State of Georgia when they unlawfully and willfully seized and restrained the Decedent, falsely arrested the Decedent, unnecessarily Tasered the Decedent, deprived the Decedent of medical assistance, caused injury to Decedent and ultimately caused Decedent's death.

3.

Defendants' conduct under color of state law proximately caused the deprivation of NELSON LEE GRAHAM, JR.'s federally protected rights. At all times mentioned in this Complaint, the Defendants acted jointly and in concert with each other. Each Defendant had the duty and the opportunity to protect the Decedent from the unlawful actions of the other Defendants, but each Defendant failed and

refused to perform such duty, thereby proximately causing the injuries herein complained of.

4.

At all times relevant hereto and until the time of his death, Decedent NELSON LEE GRAHAM, JR. was a citizen of the United States and resided in Richmond County, Georgia.

5.

Christina Ann Graham is NELSON LEE GRAHAM, JR.'s widow. Christina Ann Graham is a citizen of the United States and resides in Richmond County, Georgia.

6.

All of the Defendants receive some form of federal funding.

7.

This Court has original subject matter jurisdiction of the federal questions presented herein pursuant to 28 U.S.C. §§ 1331 and 1343. This Court also has jurisdiction pursuant to the provisions 42 U.S.C. 1983 and 42 U.S.C. § 1988, Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131, et seq., and by the laws of the State of Georgia, pursuant to 28 U.S.C. § 1367(a), because the state and federal claims "derive from a common nucleus of operative fact." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

8.

Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because all incidents and or occurrences giving rise to this action occurred in this District, Plaintiff resides in this judicial District, some or all of the Defendants reside in this judicial district, and the events or omissions giving rise to these claims arose here.

9.

Jurisdiction supporting a claim for attorney fees and costs is conferred by 42 U.S.C. §§ 1983, 1988, the 4th Amendment to the United States Constitution, and relevant Georgia law.

10.

This action has been brought within two years of the negligent acts and omissions described herein, and all public-entity notice provisions, if any, have been met. (*See* Exhibit "A" attached hereto.)

11.

Richmond County Deputy Sheriff Madisen Emerson ("Deputy Emerson") was at all relevant times employed by the Richmond County Sheriff's Office and was acting in the course and scope of her employment and under the color of law at all times relevant, and she is sued herein in her individual capacity for purposes of her actions and inactions as described below.

12.

Service can be perfected upon Deputy Emerson by serving her at her home address located at 32 Carolina Village Circle, Beaufort, South Carolina, 29906.

13.

Deputy Emerson is subject to the jurisdiction of this Court.

14.

Venue is proper in this Court as to Deputy Emerson.

15.

Richmond County Deputy Sheriff Kevin Clarke ("Deputy Clarke") was at all relevant times employed by the Richmond County Sheriff's Office and was acting in the course and scope of his employment and under the color of law at all times relevant, and he is sued herein in his individual capacity for purposes of his actions and inactions as described below.

16.

Service can be perfected upon Deputy Clarke by serving him at his home address located at 3809 Beacon Drive, Augusta, Georgia 30906 in Augusta-Richmond County.

17.

Deputy Clarke is subject to the jurisdiction of this Court.

18.

Venue is proper in this Court as to Deputy Clarke.

19.

Richmond County Deputy Sheriff Elvin Thompson ("Deputy Thompson") was at all relevant times employed by the Richmond County Sheriff's Office and was acting in the course and scope of his employment and under the color of law at all times relevant, and he is sued herein in his individual capacity for purposes of his actions and inactions as described below.

20.

Service can be perfected upon Deputy Thompson by serving him at his home address located at 3722 Walton Way Ext Apt 212, Augusta, Georgia 30907 in Augusta-Richmond County.

21.

Deputy Thompson is subject to the jurisdiction of this Court.

22.

Venue is proper in this Court as to Deputy Thompson.

**Facts**

23.

NELSON LEE GRAHAM, JR. (hereinafter "MR. GRAHAM") was married, had eight children, and worked as a cook.

24.

MR. GRAHAM had a history of mental illness including paranoia, auditory hallucinations, and was diagnosed with schizoaffective disorder. Like many people affected by mental health disorders, MR. GRAHAM would have episodes of decompensation.

25.

When MR. GRAHAM did not take his prescribed medications, this would lead to episodes where he would not take care of physical needs; for example, he would not bathe, sleep, or eat, and he would verbally respond to his auditory hallucinations.

26.

For long periods of time, MR. GRAHAM would be able to manage his condition, but in December of 2022, MR. GRAHAM had an episode in which his mental health declined and overtook his ability to maintain normalcy.

27.

Christina Ann Graham noticed that her husband, MR. GRAHAM, needed mental health assistance, and she sought assistance from public mental-health services.

28.

On the evening of December 16, 2022, Christina Ann Graham was expecting mobile health crisis intervention to help her husband.

29.

Rather than responding with mental-health crisis evaluators, Deputy Emerson and Deputy Clarke arrived to the Graham home at around 10 pm.

30.

MR. GRAHAM was in his bedroom, sitting on the foot of his bed with his arms folded over his chest, when Deputy Emerson and Deputy Clarke approached.

31.

Upon seeing the Deputy Sheriffs, MR. GRAHAM stood and walked over to the threshold of his bedroom and stated, "I am not a criminal" and asked, "why are you here?"

32.

Deputy Clarke grabbed MR. GRAHAM, and, as MR. GRAHAM kept his arms folded in front of his body, Deputy Emerson stated, "Stop resisting or I'm going to tase."

33.

At no time did MR. GRAHAM have a weapon.

34.

At no time was MR. GRAHAM aggressive or violent toward anyone.

35.

MR. GRAHAM was not armed.  MR. GRAHAM was not attempting to hit, scratch, kick, bite, or hurt any individual.  Richmond County Sheriff's Office Case Report Narrative admits MR. GRAHAM was "passively resisting via refusing to give Deputies his arms."

36.

Deputy Clarke then tackled MR. GRAHAM and Deputy Emerson deployed her X26 Taser delivering 19 pulses per second of 50,000 volts of electricity toward and into MR. GRAHAM while he lay face-down with his hands underneath him.

37.

According to reports, Deputy Emerson drive stunned MR. GRAHAM several times, deploying a second taser cartridge, despite admitting that MR. GRAHAM was "dead weight [and] covering his arms."

38.

Deputy Clarke handcuffed MR. GRAHAM's right wrist, and Deputy Thompson along with Deputy Emerson handcuffed MR. GRAHAM's left wrist. Deputy Clarke and Deputy Emerson used physical force on MR. GRAHAM to pin

MR. GRAHAM facedown into the floor, arms hand-cuffed behind him, and applied pressure to his body and limbs to hold him immobilized in that position.

39.

Soon thereafter, MR. GRAHAM stopped breathing.

40.

MR. GRAHAM was told to stand up, but MR. GRAHAM could not respond.

41.

The Deputies then picked MR. GRAHAM's lifeless body up and moved him from his bedroom into the living room.

42.

Deputy Emerson retrieved and utilized Narcan on MR. GRAHAM with no reaction.

43.

Other attempts to revive MR. GRAHAM were unsuccessful.

44.

The Richmond County Coroner's Office later reported the type of death to be Homicide and the cause of death to be "Physical alteration involving prone positions, mechanical asphyxia, and electroconductive device use in the setting of schizoaffective disorder".

45.

At no point did MR. GRAHAM attempt to acquire any Deputy's weapon. At no point was MR. GRAHAM near to a weapon, nor did MR. GRAHAM have a weapon in his custody or control or attempt to acquire one. At no point did MR. GRAHAM attempt to strike any Deputy or anyone else. At no point did MR. GRAHAM attempt to injure any Deputy Sheriff or anyone else. At no point did MR. GRAHAM verbally threaten any Deputy or anyone else.

46.

Deputy Clarke, Deputy Emerson, and Deputy Thompson used unreasonable and ultimately deadly force against MR. GRAHAM during a "mental health" response, causing his death on December 12, 2022.

## CAUSES OF ACTION

### COUNT I
### 42 U.S.C. § 1983 Excessive Force in Violation of the Fourth Amendment
### Against Deputy Clarke, Deputy Emerson, and Deputy Thompson

47.

Under the circumstances described above, there was no need for force because MR. GRAHAM was experiencing a mental health crisis, and therefore any use of force was excessive. Deputy Clarke, Deputy Emerson, and Deputy Thompson utilized unnecessary excessive force and or failed to intervene to stop said use of force.

48.

Where there is no need for force to be used against MR. GRAHAM, and any force used is constitutionally unreasonable.

49.

Not only was the force used unreasonable and excessive, but the force utilized was in the community caretaker context–even less force is authorized in such circumstances.

50.

Force decisions must reasonably consider the Officer's objective for using force; the Officer's reasonable perceptions of the subject's actions or behaviors the officer is attempting to stop, thwart, or control; the foreseeable risks of injuries or harm to the subject resulting from the force to be used and the foreseeable secondary risks of injury.

51.

Deputy Clarke, Deputy Emerson, and Deputy Thompson did not give appropriate warnings nor reasonably perceive MR. GRAHAM was capable of complying with demands before deploying the amount of force deployed.  Neither Deputy Clarke, Deputy Emerson, nor Deputy Thompson considered all of the above before administering multiple instances of force.

52.

Considering MR. GRAHAM was unarmed, not a threat, not a flight risk, and that model Police Policy in dealing with emotionally disturbed or people in mental health crisis calls for de-escalation techniques, calming of the circumstances, and urges responding Deputies not to physically touch emotionally disturbed or people in mental health crisis, but rather to maintain a distance and speak respectfully in order to reassure a person in crisis that they will be safely helped, any force used was unreasonable.

53.

MR. GRAHAM committed no criminal activity justifying an arrest or handcuffing.

54.

Deputy Clarke, Deputy Emerson, and Deputy Thompson were called to the MR. GRAHAM residence for a mental-health crisis.  There was no crime, and therefore the severity of the crime at issue was non-existent or minimal.  MR. GRAHAM posed no threat to the safety of Deputy Clarke, Deputy Emerson, Deputy Thompson or others, and was not actively resisting arrest or attempting to evade arrest by flight.  MR. GRAHAM was having a mental-health crisis, and such was known to Deputy Clarke, Deputy Emerson, and Deputy Thompson.

55.

Deputy Emerson did not brandish and electrify her Taser because she feared for her safety or the safety of anyone else at the scene. A desire to cow a subject into compliance is not one of the reasons for which the use of weapons is allowed.

56.

The infliction of pain due to an officer's impatience is not a legitimate use of the force used by Deputy Clarke, Deputy Emerson, and Deputy Thompson here.

57.

The callous and or reckless actions and omissions described above constitute multiple separate violations of the rights secured to MR. GRAHAM by the Fourth Amendment to the United States Constitution.

58.

Deputy Clarke, Deputy Emerson, and Deputy Thompson s unlawfully and unreasonably seized MR. GRAHAM by means of excessive physical force and unreasonably restrained MR. GRAHAM of his freedom, and/or Deputy Clarke, Deputy Emerson, and Deputy Thompson failed to intervene when others unlawfully seized MR. GRAHAM with excessive force.

59.

In doing the acts or omissions complained of above, Deputy Clarke, Deputy Emerson, and Deputy Thompson acted under the color of law to deprive Plaintiff of certain constitutionally protected rights, including, but not limited to:

- The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;

- The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution;

- The right to be free from the use of excessive force by Deputies and state actors, which is guaranteed by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

- The right to be free from deprivation of liberty and injury without substantive due process.

- The right to be free from unlawful, reckless, deliberately indifferent, and conscience-shocking deadly and/or excessive force under the United States Constitution and its Amendments.

- The right to be free from deprivation of liberty and injury without substantive due process and from state created danger and to be free of

unlawful, reckless, deliberately indifferent, and conscience-shocking deadly and/or excessive force under the United States Constitution and its Amendments.

60.

Deputy Clarke, Deputy Emerson, and Deputy Thompson unconstitutionally seized and repeatedly tasered MR. GRAHAM to death, although MR. GRAHAM was not resisting, was not committing a crime, and did not pose a threat to Defendants.

61.

Deputy Clarke, Deputy Emerson, and Deputy Thompson are not entitled to qualified immunity because their use of force violated clearly established law as set forth in cases such as *Fils v. City of Aventura,* 647 F.3d 1272, 1289 (11th Cir.2011) ("unprovoked force against a non-hostile and non-violent suspect who has not disobeyed instructions violates that suspect's rights under the Fourth Amendment") and *Oliver v. Fiorino*, 586 F.3d 898 (11th Cir. 2009) (holding that repeated electroshocks from law-enforcement officers that resulted in death of detainee constituted excessive force in violation of the Fourth Amendment).

**COUNT II**

**State-Law Claims for Negligence & Gross Negligence Against Deputy Clarke, Deputy Emerson, and Deputy Thompson**

62.

Under the circumstances described above, there was no need for force because MR. GRAHAM was experiencing a mental health crisis, and therefore any use of force was excessive. Deputy Clarke, Deputy Emerson, and Deputy Thompson utilized unnecessary excessive force and or failed to intervene to stop said use of force.

63.

Where there is no need for force to be used against MR. GRAHAM, and any force used is constitutionally unreasonable.

64.

Not only was the force used unreasonable and excessive, but the force utilized was in the community caretaker context–even less force is authorized in such circumstances.

65.

Force decisions must reasonably consider the Officer's objective for using force; the Officer's reasonable perceptions of the subject's actions or behaviors the officer is attempting to stop, thwart, or control; the foreseeable risks of injuries or

harm to the subject resulting from the force to be used and the foreseeable secondary risks of injury.

66.

Deputy Clarke, Deputy Emerson, and Deputy Thompson did not give appropriate warnings nor reasonably perceive MR. GRAHAM was capable of complying with demands before deploying the amount of force deployed. Neither Deputy Clarke, Deputy Emerson, nor Deputy Thompson considered all of the above before administering multiple instances of force.

67.

Considering MR. GRAHAM was unarmed, not a threat, not a flight risk, and that model Police Policy in dealing with emotionally disturbed or people in mental health crisis calls for de-escalation techniques, calming of the circumstances, and urges responding Deputies not to physically touch emotionally disturbed or people in mental health crisis, but rather to maintain a distance and speak respectfully in order to reassure a person in crisis that they will be safely helped, any force used was unreasonable.

68.

MR. GRAHAM committed no criminal activity justifying an arrest or handcuffing.

69.

Deputy Clarke, Deputy Emerson, and Deputy Thompson were called to the MR. GRAHAM residence for a mental-health crisis. There was no crime, and therefore the severity of the crime at issue was non-existent or minimal. MR. GRAHAM posed no threat to the safety of Deputy Clarke, Deputy Emerson, Deputy Thompson or others, and was not actively resisting arrest or attempting to evade arrest by flight. MR. GRAHAM was having a mental-health crisis, and such was known to Deputy Clarke, Deputy Emerson, and Deputy Thompson.

70.

Deputy Emerson did not brandish and electrify her Taser because she feared for her safety or the safety of anyone else at the scene. A desire to cow a subject into compliance is not one of the reasons for which the use of weapons is allowed.

71.

The infliction of pain due to an officer's impatience is not a legitimate use of the force used by Deputy Clarke, Deputy Emerson, and Deputy Thompson here.

72.

Plaintiff is entitled to relief against Deputy Clarke, Deputy Emerson, and Deputy Thompson for their negligence and/or gross negligence in relation to the wrongful acts described above.

73.

Deputy Clarke, Deputy Emerson, and Deputy Thompson unconstitutionally seized and repeatedly tasered MR. GRAHAM to death, although MR. GRAHAM was not resisting, was not committing a crime, and did not pose a threat to Defendants. The conduct of these Defendants was negligent and caused damages to MR. GRAHAM, including personal injury, physical and mental pain and suffering, and death.

## COUNT III
## Common Law Assault & Battery
## Against Deputy Clarke, Deputy Emerson, and Deputy Thompson

74.

Georgia law protects individuals from bodily invasions such as assault and battery. See O.G.C.A. § 51-1-13, § 51-1-14.

75.

Deputy Clarke, Deputy Emerson, and Deputy Thompson intentionally and unlawfully seized and repeatedly tasered MR. GRAHAM to death, although MR. GRAHAM was not resisting, was not committing a crime, and did not pose a threat to Defendants. The conduct of these Defendants constitutes assault and battery and caused damages to MR. GRAHAM, including personal injury, physical and mental pain and suffering, and death.

76.

Deputy Clarke, Deputy Emerson, and Deputy Thompson intended to cause and did cause MR. GRAHAM to suffer apprehension of immediate harm and severe injury as described above.

77.

Deputy Emerson intentionally utilized her Taser as an extension of her body to inflict an offensive, unwanted, and harmful touching onto Plaintiff.

78.

At no time did MR. GRAHAM consent to the harmful and offensive touching and force from Deputy Clarke, Deputy Emerson, and Deputy Thompson.

79.

Throughout the encounter, Deputy Clarke, Deputy Emerson, and Deputy Thompson acted willfully, with malice, in bad faith, without any lawful basis, and with intent to cause injury to MR. GRAHAM.

80.

MR. GRAHAM was seriously injured by Deputy Clarke, Deputy Emerson, and Deputy Thompson.

81.

Deputy Clarke, Deputy Emerson, and Deputy Thompson placed MR. GRAHAM in immediate fear of death and severe bodily harm by battering him without any just provocation or cause.

82.

Deputy Clarke, Deputy Emerson, and Deputy Thompson inflicted harmful and offensive, unprivileged and unconsented contact upon MR. GRAHAM with the intent to cause such contact.

83.

The conduct of the Deputy Clarke, Deputy Emerson, and Deputy Thompson, as described herein, intentionally caused an unauthorized harmful or offensive contact to MR. GRAHAM's person.

84.

As a proximate result of the actions and omissions discussed in this count, MR. GRAHAM was injured, endured physical pain and mental suffering, experienced mental anguish and emotional distress and died from these injuries.

**COUNT IV**
**Intentional Infliction of Emotional Distress**
**Against Deputy Clarke, Deputy Emerson, and Deputy Thompson**

85.

Deputy Clarke, Deputy Emerson, and Deputy Thompson intentionally and unlawfully seized and repeatedly tasered MR. GRAHAM to death, although MR. GRAHAM was not resisting, was not committing a crime, and did not pose a threat to Defendants.  The conduct of these Defendants constitutes intentional infliction of emotional distress and caused Mr. GRAHM severe mental pain and suffering.

86.

The state actors created a medical emergency for MR. GRAHAM while in their custody and control.

87.

Deputy Clarke, Deputy Emerson, and Deputy Thompson's actions in falsely arresting MR. GRAHAM, tackling MR. GRAHAM, ignoring his pleas not to harm him, restricting his freedom of movement, threatening, intimidating, and inflicting pain unto MR. GRAHAM with a Taser device, slamming MR. GRAHAM into the ground, handcuffing him, and applying unnecessary excessive force were outrageous and intolerable in a civilized society.

88.

Deputy Clarke, Deputy Emerson, and Deputy Thompson, individually and in concert, engaged in outrageous conduct recklessly and or with the intent of causing MR. GRAHAM severe pain and emotional distress.

89.

Deputy Clarke, Deputy Emerson, and Deputy Thompson's outrageous actions and or omissions were the actual and proximate cause of MR. GRAHAM's emotional distress.

90.

Deputy Clarke, Deputy Emerson, and Deputy Thompson acted willfully and wantonly, *inter alia*, because, upon information and belief, they assumed that MR. GRAHAM was under the influence of some sort of "street drug" and was therefore somehow morally deserving of rough treatment, Deputy Clarke, Deputy Emerson, and Deputy Thompson ignored that they had been called for assistance with a mental health situation and ignored Decedent's obvious signs that Deputy Clarke, Deputy Emerson, and Deputy Thompson were hurting Decedent, employed handcuffs, restraint tactics and Tasered Decedent with conducted electric energy weapon (Taser device) that they have or reasonably should have been trained and known not to employ when dealing with persons experiencing mental health crises.

91.

These wrongful acts were the proximate cause of injuries further described above.

92.

Based on the willful, outrageous and malicious conduct of Deputy Clarke, Deputy Emerson, and Deputy Thompson, Plaintiff is entitled to punitive damages.

93.

A person is subject to liability to the other for physical harm resulting from the failure to exercise reasonable care "when a person undertakes either gratuitously or for consideration to render services to another, which he should recognize as necessary for the protection of the other's person or things."

94.

Deputy Clarke, Deputy Emerson, and Deputy Thompson undertook to respond to a call for mental health assistance, breached their duty to render appropriate care to MR. GRAHAM, a person needing their services, and such breach of duty was a direct cause of the harm that occurred to MR. GRAHAM.

95.

Deputy Clarke, Deputy Emerson, and Deputy Thompson breached their duty to MR. GRAHAM by failing to exercise reasonable care in assisting a person experiencing a mental health crisis. The conduct of the Deputy Clarke, Deputy

Emerson, and Deputy Thompson, as described herein, intentionally and wrongfully restrained MR. GRAHAM's freedom of movement and liberty, without consent, and MR. GRAHAM suffered distress and was damaged as a result.

96.

As a direct and proximate result of Deputy Clarke, Deputy Emerson, and Deputy Thompson's failure, MR. GRAHAM suffered physical and emotional injuries, and wrongful death.

## COUNT V

## Wrongful Death Against All Defendants

97.

Deputy Clarke, Deputy Emerson, and Deputy Thompson intentionally and unlawfully seized and repeatedly tasered MR. GRAHAM to death, although MR. GRAHAM was not resisting, was not committing a crime, and did not pose a threat to Defendants.

98.

MR. GRAHAM died on December 12, 2022, as a direct and proximate result of the unconstitutional, intentional, wanton, and/or negligent acts and omissions of Deputy Clarke, Deputy Emerson, and Deputy Thompson as described in this Complaint, individually and/or jointly.

99.

Plaintiff seeks the full value of the life of MR. GRAHAM under Georgia's wrongful death statutes due to the intentional, wanton, and or negligent actions and omissions of Deputy Clarke, Deputy Emerson, and Deputy Thompson.

## COUNT VI
## State Tort Law Estate's Claim for Survival Injury Against All Defendants

100.

Deputy Clarke, Deputy Emerson, and Deputy Thompson intentionally and unlawfully seized and repeatedly tasered MR. GRAHAM to death, although MR. GRAHAM was not resisting, was not committing a crime, and did not pose a threat to Defendants. The conduct of these Defendants caused damages to MR. GRAHAM, including personal injury, physical and mental pain and suffering, and death.

101.

As set out above, MR. GRAHAM sustained suffering as a direct result of Deputy Clarke, Deputy Emerson, and Deputy Thompson's acts and omissions which constitute violations of federal and state law.

102.

In her capacity as the anticipated Administrator of MR. GRAHAM's Estate, Plaintiff is entitled to recover all damages to which MR. GRAHAM would have been entitled had he survived. As a result of Deputy Clarke, Deputy Emerson, and

Deputy Thompson's wrongful conduct, MR. GRAHAM endured pain and suffering and was emotionally affected as a result of Deputy Clarke, Deputy Emerson, and Deputy Thompson's acts and omissions prior to his death.

103.

Based on the foregoing, Plaintiff as the anticipated Administrator of her late husband's Estate is entitled to recover from Deputy Clarke, Deputy Emerson, and Deputy Thompson damages equal to all expenses incurred and to recover for MR. GRAHAM's final expenses.

104.

Individually and jointly, Deputy Clarke, Deputy Emerson, and Deputy Thompson recklessly, wantonly, consciously and or deliberately disregarded the risk that their actions posed to MR. GRAHAM.  As a direct and proximate result of Deputy Clarke, Deputy Emerson, and Deputy Thompson's conduct, Plaintiffs suffered, *inter alia*, substantial pain, suffering, discomfort, lost wages, and wrongful death.

## COUNT VII
## Punitive Damages

105.

Deputy Clarke, Deputy Emerson, and Deputy Thompson intentionally and unlawfully seized and repeatedly tasered MR. GRAHAM to death, although MR. GRAHAM was not resisting, was not committing a crime, and did not pose a threat

to Defendants.    The conduct of these Defendants caused damages to MR. GRAHAM, including personal injury, physical and mental pain and suffering, and death.

106.

Deputy Clarke, Deputy Emerson, and Deputy Thompson's actions showed willful misconduct, wantonness, and the entire want of care which would raise the presumption of conscious indifference to the consequences so as to entitle Plaintiffs to recover punitive damages against the Deputy Clarke, Deputy Emerson, and Deputy Thompson in an amount to be determined in the enlightened conscience of impartial jurors to punish, penalize, and deter Deputy Clarke, Deputy Emerson, and Deputy Thompson from repeating their conduct.

107.

Deputy Clarke, Deputy Emerson, and Deputy Thompson acted with the specific intent to cause harm in that Deputy Clarke, Deputy Emerson, and Deputy Thompson desired to cause the consequences of their actions and/or knew that the consequences of their actions were substantially certain to result.

108.

Plaintiffs incorporate all other paragraphs of this Complaint for purposes of this claim to show Deputy Clarke, Deputy Emerson, and Deputy Thompson

recklessly, consciously and deliberately disregarded the risk that their actions posed to MR. GRAHAM.

109.

As a direct and proximate result of Deputy Clarke, Deputy Emerson, and Deputy Thompson's conduct, Plaintiffs suffered, *inter alia*, substantial pain, suffering, discomfort, lost wages, and wrongful death.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demands a trial by jury and prays for damages, respectfully requesting that the Court:

    a. Allow a trial by jury on all issues so triable;

    b. Award Plaintiffs compensatory and punitive damages against all Defendants;

    c. Grant costs of this action, interest, and attorneys' fees per 42 U.S.C. § 1988;

    d. Award further relief as the Court deems equitable, proper, and just.

Respectfully submitted this 30th day of November 2023.

        **ERIC J. HERTZ, PC**

        ***/s/ Jesse A. Van Sant***
        JESSE A. VAN SANT
        Georgia Bar Number 558101
        *jesse@hertz-law.com*

8300 Dunwoody Pl. Suite 210
Atlanta, GA 30350
Phone: (404) 577-8111
Fax: (404) 577-8116
*Counsel for Plaintiffs*

# ERIC J. HERTZ, P.C.
## *Trial Lawyers*

June 15, 2023

**Via Fed Ex Overnight Delivery**
**Return Receipt No.: 8180 5509 1288**
Mayor Garnett Johnson
Augusta Mayor's Office
535 Telfair St.
Suite 200
Augusta, GA 30901

**Via Fed Ex Overnight Delivery**
**Return Receipt No.: 8180 5509 1277**
Mayor Garnett Johnson
Augusta-Richmond County Board of
Commissioners' Office
535 Telfair St.
Suite 220
Augusta, GA 30901

**Via Fed Ex Overnight Delivery**
**Return Receipt No.: 8180 5509 1314**
Clerk of Augusta-Richmond County
Commission Office
Augusta Commission Office
535 Telfair St.
Suite 220
Augusta, GA 30901

**Via Fed Ex Overnight Delivery**
**Return Receipt No.: 8180 5509 1303**
Sheriff Richard Roundtree
Sheriff's Office
Law Enforcement Center
400 Walton Way
Augusta, GA 30901

## ANTE-LITEM NOTICE OF CLAIM PURSUANT TO O.C.G.A. § 36-33-5 AND NOTICE OF CLAIM PURSUANT TO O.C.G.A. § 36-11-1

**RE:** **Our Clients:** **Christina Graham, Individually as Surviving Spouse of Nelson Lee Graham, Jr., and Christina Graham as Anticipated Personal Representative of the Estate of Nelson Graham, Jr.**

**Incident Date:** **Friday, Dec. 16, 2022 around 10 p.m. to Saturday Dec. 17, 2022 at 12:00 a.m., resulting in Wrongful Death on January 7, 2023**

**Location:** **1900 block of George Road, near Kissingbower Road and Gordon Highway, Richmond County, GA**

**Date of Death:** **January 7, 2023**

**Extent of Injury:** **Pain, suffering, and ultimately death**

**Legal Claims:** **Violations of 42 U.S.C. § 1983, excessive force, violations of Americans with Disability Act, *Monell* and *Canton* claims for training, discipline, supervision which caused wrongful death, state-law claims for negligence and wrongful death, personal injuries, mental and physical pain and suffering, survival action, general damages, special damages, punitive damages, attorney's fees, costs of litigation, and funeral costs.**

8300 Dunwoody Place, Suite 210 | Atlanta, Georgia 30350 | facsimile 404.577.8116 | telephone 404.577.8111
www.hertz-law.com

Dear Mayor Johnson, Sheriff Roundtree, and Augusta Richmond County Commissioners:

Our law firm represents Christina Graham, the bereaved wife of Nelson Lee Graham, Jr., in her individual capacity, as well as in her capacity as the anticipated Personal Representative of the Estate of Nelson Lee Graham, Jr. This letter is intended to serve as ante-litem notice of our clients' claims pursuant to O.C.G.A. § 36-33-5 and as notice of our clients' claims pursuant to O.C.G.A. § 36-11-1. This letter also constitutes our final demand to resolve all our clients' claims arising under state and federal law as described herein. As such, this letter further constitutes a statement made in the course of efforts to settle or compromise claims and will only be admissible following judgment in Plaintiffs' favor as to attorney fees.

Our investigation into the circumstances giving rise to this claim lead us to believe the following:

On Friday, December 16, 2022, at approximately 10:00 P.M., the Richmond County Sheriff's Office responded to the residence of Nelson Lee Graham, Jr. at 1927 George Road, Augusta, Georgia, in Richmond County, for the purpose of serving a court order to transport Nelson Lee Graham, Jr., for a mental-health evaluation. The Sheriff's Office was negligently late in responding to Mrs. Christina Graham's initial request for assistance.

Richmond County Sheriff's Deputy, Kevin Clarke, and Richmond County Sheriff's Deputy, Madisen Emerson, ultimately arrived on the scene without awaiting a crisis-intervention team, which likewise constitutes negligence, deliberate indifference to a serious medical need, and a violation of the Americans with Disabilities Act. Deputy Emerson then made an unwarranted, negligent, and unreasonable deployment of her department-issued Taser against Nelson Lee Graham, Jr. (*See* Exhibit "A" attached hereto, which is incorporated by reference as if fully set forth herein verbatim.) Such use of force was unjustified and unlawful under the circumstances.

After being tased, Mr. Graham became unresponsive and was transported by Gold Cross EMS to Augusta University Medical Center for treatment, where he remained unresponsive due to brain damage, kidney failure, and damage to his lungs and heart.

Mr. Graham never recovered and tragically passed away on January 7, 2023, as a direct result of his encounter with the Richmond County Sheriff's Office. Mr. Graham was only thirty-three years old when his life was taken. (See Exhibit "B" attached hereto.) He is survived by his loving wife and three young children.

Notice is hereby provided for claims of:

- **42 USC § 1983 CLAIM FOR EXCESSIVE FORCE**

- **42 USC § 1983 CLAIM FOR DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS**

- **42 USC § 1983 CLAIM FOR FAILURE TO INTERVENE TO PREVENT CIVIL RIGHTS VIOLATIONS**

- **42 USC § 1983 CLAIM FOR DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS**

- **42 U.S.C. § 1983 (*Monell* Liability) CLAIM FOR DE FACTO POLICY OF EXCESSIVE FORCE**

  **42 USC § 1983 CLAIM FOR WRONGFUL DEATH, PERSONAL INJURY, PAIN AND SUFFERING, GENERAL DAMAGES, AND SPECIAL DAMAGES**

- **SUPERVISORY LIABILITY (*Canton* Liability) CLAIM**

- **VIOLATIONS UNDER THE AMERICANS WITH DISABILITIES ACT**

- **STATE-LAW CLAIMS FOR NEGLIGENCE, WRONGFUL DEATH, PERSONAL INJURY, PAIN AND SUFFERING, SPECIAL DAMAGES, GENERAL DAMAGES, AND VICARIOUS LIABILITY**

## OFFER TO COMPROMISE CLAIMS

In an effort to provide notice of our clients' claims and resolve such claims without litigation, our clients make the following separate and independent offers to settle and compromise her claims:

First, I am authorized to extend a demand on behalf of Christina Graham, the bereaved wife of Nelson Lee Graham, Jr., in her individual capacity, as well as in her capacity as the anticipated Personal Representative of the Estate of Nelson Lee Graham, Jr., to settle all my clients' claims against Augusta-Richmond County in exchange for Ten Million Dollars ($10,000,000.00).

Second, I am authorized to extend a extend a separate and independent demand on behalf of Christina Graham, the bereaved wife of Nelson Lee Graham, Jr., in her individual capacity, as well as in her capacity as the anticipated Personal Representative of the Estate of Nelson Lee Graham, Jr., to settle all my clients' claims against the Richmond County Sheriff's Office (i.e., Sheriff Roundtree in his official capacity) in exchange for Ten Million Dollars ($10,000,000.00).

This is a straightforward case of clear liability with wanton and indifferent conscious-shocking conduct for which a jury will no doubt determine requires severe financial penalty. You have thirty (30) days from the date of your receipt of this demand to accept this offer. If this offer is not timely accepted, Plaintiff will file suit and seek a judgment for these claims under state and federal law in an amount that far exceeds this demand.

Thank you for your attention to this matter.

Very truly yours,

**ERIC J. HERTZ, P.C.**

Eric James Hertz

Enc.:   Ex. "A" – Incident Report
        Ex. "B" – Death Certificate
cc:
Jesse A. Van Sant, Esq.
via email:  jesse@hertz-law.com
EJH/jdh

# RICHMOND COUNTY SHERIFF'S OFFICE

### Sheriff Richard Roundtree
Law Enforcement Center
400 Walton Way
Augusta, GA 30901
Phone: 706.821.1000    Fax: 706.821.1064

# Fax

| **ATTN:** | Eric J. Hertz | **From:** | Sgt. John Perry |
|---|---|---|---|
| **Fax:** | (404) 577-8116 | **Pages:** | 5 (Including Fax Cover Sheet) |
| **Phone:** | (706) 821-1112 | **Date:** | December 30, 2022 |
| **Re:** | Open Records Request | **CC:** | |

☐ **Urgent**   ☐ **For Review**   ☐ **Please Comment**   ☐ **Please Reply**   ☐ **Please Recycle**

Sgt. John Perry
Internal Affairs Division
Public Information Office
(706) 821-1112 Office
(706) 821-1462 Fax

# RICHMOND COUNTY SHERIFF'S OFFICE

**Sheriff Richard Roundtree**
Law Enforcement Center
400 Walton Way
Augusta, GA 30901
**Phone: 706.821.1000    Fax: 706.821.1064**

December 30, 2022

Eric Hertz
Eric J. Hertz P.C.
8300 Dunwoody Place Suite 210
Atlanta, GA 30350

The Richmond County Sheriff's Public Information Office is in receipt of your December 29, 2022 open records request for the following:

1. Computer-aided dispatch report, summary report, and audio and video files. OCGA 50-18-71(j)
2. Dash cam and or body cam footage. OCGA 50-18-72(a)(4)
3. Police investigatory materials and reporting. OCGA 50-18-72(a)(4)
4. A complete copy of the investigative file. OCGA 50-18-72(a)(4)
5. Any and all videos. OCGA 50-18-72(a)(4)
6. Any and all photographs. OCGA 50-18-71(j)
7. Any and all microphone and radio recordings. OCGA 50-18-71(j)
8. Any and all witness statements. OCGA 50-18-72(a)(4)
9. Any and all records and reports associated with Nelson Lee Graham Jr. See attached Incident Report. Person information was redacted. OCGA 50-18-72(a)(20)
10. Any and all records and reports (including GPS based detailed location data) of vehicles and or individuals with GPS tracking devices in and around the vicinity of 1900 block of George Road, near Kissingbower Road and Gordon Highway, Richmond County, GA, and or our client Nelson Lee Graham Jr. on the incident date. OCGA 50-18-71(j)
11. The mobile or cellular phone number of the responding officers, and any communications sent or received, and documentation collected from or on, said mobile or cellular phone, and its whereabouts during and after the incident in question. OCGA 50-18-72(a)(21)
12. An inventory of any and all items reviewed at the scene or thereafter. OCGA 50-18-72(a)(4)

Our agency does not possess calls from 911, 911 audio recordings, recordings of radio transmissions, or CAD narratives; however, this information could possibly be obtained by contacting the Augusta 911 Call Center located at 911 4th St Augusta, GA 30901 (706) 821-1242. The Georgia Bureau of Investigation (GBI) is the investigating agency for this incident, and all open records requests other than the Incident Report should be addressed to them.

Respectfully,

*John Perry*

Sgt. John Perry
Internal Affairs/ Public Information Office
706-821-1112 (desk)
706-821-1462 (fax)



**Richmond County Sheriff's Office**

CASE REPORT

400 Wakon Way

Augusta, GA 30901

CASE# **2022-00295952**

| | | |
|---|---|---|
| **EVENT** | REPORTED DATE/TIME<br>**12/16/2022 22:15** | OCCURRED INCIDENT TYPE<br>**(9204) Insanity** |
| | OCCURRED FROM DATE/TIME<br>**12/09/2022 22:00** | OCCURRED THRU DATE/TIME<br>**12/09/2022  22:15** | LOCATION OF OCCURRENCE<br>**1927 GEORGE RD**<br>**Augusta, GA** |

| | | STATUTE/DESCRIPTION | COUNTS | ATTEMPT/COMMIT |
|---|---|---|---|---|
| **OFFENSES** | **01** | **94-MI**<br>**MENTALLY INCOMPETENT PERSON** | **1** | **Commit** |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| | JACKET/SUBJECT TYPE | | NAME (LAST, FIRST, MIDDLE SUFFIX) | | | | |
|---|---|---|---|---|---|---|---|
| **SUBJECT** | **Adult** | **Complainant** | **Graham, Christina Ann** | | | | |
| | DOB<br>**/1981** | AGE or AGE RANGE<br>**41** | ADDRESS (STREET, CITY, STATE, ZIP)<br>**1927 GEORGE RD Augusta, GA 30904** | | | | |
| | RACE<br>**Black or African American** | | SEX<br>**Female** | HEIGHT or RANGE<br>**5'7"  5'7"** | WEIGHT or RANGE<br>**182  182** | HAIR<br>**Black** | EYE<br>**Brown** |
| | DL NUMBER/STATE<br>**049454991 / GA** | | PRIMARY PHONE | PHONE #2 | | PHONE #3 | |

| | JACKET/SUBJECT TYPE | | NAME (LAST, FIRST, MIDDLE SUFFIX) | | | | |
|---|---|---|---|---|---|---|---|
| **SUBJECT** | **Adult** | **Other** | **Graham, Nelson Lee Jr** | | | | |
| | DOB<br>**/1989** | AGE or AGE RANGE<br>**33** | ADDRESS (STREET, CITY, STATE, ZIP)<br>**1927 GEORGE RD Augusta, GA 30904** | | | | |
| | RACE<br>**Black or African American** | | SEX<br>**Male** | HEIGHT or RANGE<br>**6'0"  6'0"** | WEIGHT or RANGE<br>**190  190** | HAIR<br>**Black** | EYE<br>**Brown** |
| | DL NUMBER/STATE<br>**053737155 / GA** | | PRIMARY PHONE | PHONE #2 | | PHONE #3 | |

| | JACKET/SUBJECT TYPE | | NAME (LAST, FIRST, MIDDLE SUFFIX) | | | | |
|---|---|---|---|---|---|---|---|
| **SUBJECT** | | | | | | | |
| | DOB | AGE or AGE RANGE | ADDRESS (STREET, CITY, STATE, ZIP) | | | | |
| | RACE | | SEX | HEIGHT or RANGE | WEIGHT or RANGE | HAIR | EYE |
| | DL NUMBER/STATE | | PRIMARY PHONE | PHONE #2 | | PHONE #3 | |

| REPORTING OFFICER | DATE | REVIEWED BY |
|---|---|---|
| **THOMPSON, ELVIN C386** | **12/16/2022** | **ALLEN, MELISSA** |



**Richmond County Sheriff's Office**
CASE REPORT
400 Walton Way
Augusta, GA 30901

CASE#2022-00295952

| NARRATIVE |
| --- |

On 12/16/22 at approximately 2215 hours, Deputies were dispatched to 1927 George Rd in reference to a Mental Eval.

The call came in via mobile crisis hotline on behalf of Christina Graham. Christina Graham had filed a 1013 on her husband, listed subject Nelson Graham, and had called mobile crisis as she stated no one had come by in reference to it and Nelson Graham was behaving erratically.

Deputies K. Clarke (unit 2202) and M. Emerson (unit 2301) were the initial responding deputies on scene who made contact with Nelson Graham who was in his bedroom at the time, sitting on his bed with arms folded over his chest. Deputies were speaking with Nelson Graham for a while, before it was determined they would need to assist him out of the residence to transport him. Deputies grabbed Nelson Graham's arms attempting to unfold them from over his chest with Nelson Graham passively resisting via refusing to give Deputies his arms. Deputies continued attempting to restrain Nelson Graham's arms, all three ultimately ending onto the ground with Nelson Graham bringing his arms back in front of chest beneath him, keeping them out of Deputes reach as they attempted to physically detain him. Deputy Emerson gave Nelson Graham verbal commands which were ignored before she activated her X-26 Taser, releasing a single cartridge into Nelson Graham with no visible effect.

Deputies continued attempting to detain Nelson Graham who remained dead weight, covering his arms. Deputy Emerson deployed her second taser cartridge still showing little to no effect on Nelson Graham, and drive stunned him several times. Deputy Emerson had managed to secure his right wrist into a handcuff, Deputy Clarke went over the radio requesting more deputies for assistance with Nelson Graham. I, Deputy Thompson responded, assisting Deputy Emerson in securing his left wrist into the handcuff while Deputy Clarke was still restraining Nelson Graham.

With Nelson Graham physically detained, Deputies gave him verbal commands to stand up so we could get him from the bedroom and out of the residence into the back of a marked patrol car with no response from Nelson Graham. Deputies moved Nelson Graham from the bedroom into the living room who was still dead weight and had not spoken a word. Once in the living room Deputies assessed Nelson Graham once again before beginning CPR. Deputy Emerson retrieved and utilized her Narcan (4mg) on Nelson Graham with no reaction. Deputies continued compressions when first responders Engine 6 responded taking over. Gold Cross Med unit 22 arrived taking over, securing Nelson Graham and transporting him to AUMC.

| REPORTING OFFICER | DATE | REVIEWED BY |
| --- | --- | --- |
| THOMPSON, ELVIN C386 | 12/16/2022 | ALLEN, MELISSA |

**Case 2022-00295952**

(Narrative Continued)

**Deputy Clarke had the physical copy of the 1013 for Nelson Graham, confirming that there was an order for him to be transported to be evaluated.  Incident documented for reporting purposes.**

**BWC was active.**

# GEORGIA DEATH CERTIFICATE

State File Number  2022GA000100199

| Field | Value |
|---|---|
| 1. DECEDENT'S LEGAL FULL NAME (First, Middle, Last) | NELSON LEE GRAHAM JR |
| 1a. IF FEMALE, ENTER LAST NAME AT BIRTH | |
| 2. SEX | MALE |
| 3a. DATE OF DEATH (Mo., Day, Year) ACTUAL DATE OF DEATH | 12/22/2022 |

| 3. SOCIAL SECURITY NUMBER | 4a. AGE (Years) | 4b. UNDER 1 YEAR Mos. Days | 4c. UNDER 1 DAY Hours Mins. | 5. DATE OF BIRTH (Mo., Day, Year) |
|---|---|---|---|---|
| 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 | 33 | | | 08/29/1989 |

| 6. BIRTHPLACE | 7a. RESIDENCE - STATE | 7b. COUNTY | 7c. CITY, TOWN |
|---|---|---|---|
| GEORGIA | GEORGIA | RICHMOND | AUGUSTA |

| 7d. ZIP CODE | 7f. INSIDE CITY LIMITS? | 8. ARMED FORCES? |
|---|---|---|
| 30904 | YES | NO |

| 7e. STREET AND NUMBER | 8b. KIND OF INDUSTRY OR BUSINESS |
|---|---|
| 1927 GEORGE ROAD | O'CHARLEYS UTILITY WORKER |

| 8a USUAL OCCUPATION | |
|---|---|
| UTILITY WORKER | 11. FATHER'S FULL NAME (First, Middle, Last) NELSON LEE GRAHAM SR |

| 9. MARITAL STATUS | 10. SPOUSE NAME |
|---|---|
| MARRIED | CHRISTINA JONES |

| 12. MOTHER'S MAIDEN NAME (First, Middle, Last) | 13a. INFORMANT'S NAME (First, Middle, Last) | 13b. RELATIONSHIP TO DECEDENT |
|---|---|---|
| GLENDA SMITH | CHRISTINA GRAHAM | SPOUSE |

| 13c. MAILING ADDRESS | 14. DECEDENT'S EDUCATION |
|---|---|
| 1927 GEORGE ROAD AUGUSTA GEORGIA 30904 | 10TH GRADE COMPLETED |

| 15. ORIGIN OF DECEDENT (Spanish/Hispanic/Latino) | 16. DECEDENT'S RACE (White, Black, American Indian, etc.) (Specify) |
|---|---|
| NO, NOT SPANISH/HISPANIC/LATINO | BLACK OR AFRICAN-AMERICAN |

| 17a. IF DEATH OCCURRED IN HOSPITAL | 17b. IF DEATH OCCURRED OTHER THAN HOSPITAL (Specify) |
|---|---|
| EMERGENCY ROOM/OUTPATIENT | |

| 18. HOSPITAL OR OTHER INSTITUTION NAME (If not in either give street and no.) | 19. CITY, TOWN or LOCATION OF DEATH | 20. COUNTY OF DEATH |
|---|---|---|
| AU MEDICAL CENTER | AUGUSTA | RICHMOND |

| 21. METHOD OF DISPOSITION (specify) | 22. PLACE OF DISPOSITION | 23. DISPOSITION DATE (Mo., Day, Year) |
|---|---|---|
| BURIAL | SOUTHVIEW CEMETERY 1102 NELLIEVILLE ROAD AUGUSTA GEORGIA 30904 | 01/07/2023 |

| 24a. EMBALMER'S NAME | 24b. EMBALMER LICENSE NO. | 25. FUNERAL HOME NAME |
|---|---|---|
| DEWAYNE HALL | 4724 | WILLIAMS FUNERAL HOME AUGUSTA |

| 25a. FUNERAL HOME ADDRESS |
|---|
| P O BOX 1605 1765 MARTIN LUTHER KING JR AUGUSTA GEORGIA 30901 |

| 26a. SIGNATURE OF FUNERAL DIRECTOR | 26b. FUN. DIR. LICENSE NO. | AMENDMENTS |
|---|---|---|
| DEWAYNE HALL | 5133 | |

| 27. DATE PRONOUNCED DEAD (Mo., Day, Year) | 28. HOUR PRONOUNCED DEAD |
|---|---|
| 12/22/2022 | 11:03 AM |

| 29a. PRONOUNCER'S NAME | 29b. LICENSE NUMBER | 29c. DATE SIGNED |
|---|---|---|
| MITHILESH SIDDU | 83992 | 12/22/2022 |

| 30. TIME OF DEATH | 31. WAS CASE REFERRED TO MEDICAL EXAMINER |
|---|---|
| 11:03 AM | YES |

32 Part I. Enter the chain of events-diseases, injuries, or complications that directly caused the death. DO NOT enter terminal events such as cardiac arrest, respiratory arrest, Or ventricular fibrillation without showing the etiology. DO NOT ABBREVIATE.

Approximate interval between onset and death

| IMMEDIATE CAUSE (Final disease or condition resulting in death) | A | Pending |
|---|---|---|
| | | Due to, or as a consequence of |
| | B | |
| | | Due to, or as a consequence of |
| | C | |
| | | Due to, or as a consequence of |
| | D | |

| Part II. Enter significant conditions contributing to death but not related to cause given in Part 1A. If female, indicate if pregnant or birth occurred within 90 days of death. | 33. WAS AUTOPSY PERFORMED? | 34. WERE AUTOPSY FINDINGS AVAILABLE TO COMPLETE THE CAUSE OF DEATH? |
|---|---|---|
| | YES | NO |

| 35. TOBACCO USE CONTRIBUTED TO DEATH | 36. IF FEMALE (Range 10-54) PREGNANT | 37. ACCIDENT, SUICIDE, HOMICIDE, UNDETERMINED (Specify) |
|---|---|---|
| UNKNOWN | NOT APPLICABLE | PENDING INVESTIGATION |

| 38. DATE OF INJURY (Mo., Day, Year) | 39. TIME OF INJURY | 40. PLACE OF INJURY (Home, Farm, Street, Factory, Office, Etc.) (Specify) | 41. INJURY AT WORK? (Yes or No) |
|---|---|---|---|
| | | | |

| 42. LOCATION OF INJURY (Street, Apartment Number, City or Town, State, Zip, County) |
|---|
| |

| 43. DESCRIBE HOW INJURY OCCURRED | 44. IF TRANSPORTATION INJURY |
|---|---|
| | |

| 45. To the best of my knowledge death occurred at the time, date and place and due to the cause(s) stated. Medical Certifier (Name, Title, License No.) | 46. On the basis of examination and/or investigation, in my opinion death occurred at the time, date and place and due to the cause(s) stated. Medical Examiner/Coroner (Name, Title, License No.) |
|---|---|
| | /S/ KENNETH EDWARD BOOSE DEP CORONE |

| 45a. DATE SIGNED (Mo., Day, Year) | 45b. HOUR OF DEATH | 46a. DATE SIGNED (Mo., Day, Year) | 46b. HOUR OF DEATH |
|---|---|---|---|
| | | 01/18/2023 | 11:03 AM |

| 47. NAME, ADDRESS, AND ZIP CODE OF PERSON COMPLETING CAUSE OF DEATH |
|---|
| KENNETH EDWARD BOOSE 912 8TH STREET AUGUSTA GEORGIA 30901 |

| 48. REGISTRAR (Signature) | 49. DATE FILED - REGISTRAR (Mo., Day, Year) |
|---|---|
| /S/ CHRISTOPHER JP HARRISON | 01/19/2023 |

Form 3903 (Rev. 04/2012), GEORGIA DEPARTMENT OF PUBLIC HEALTH



**FedEx** Express

Package US Airbill

FedEx Tracking Number  **8180 5509 1303**

Form ID No.  **0215**     MUR3

**Sender's Copy**

**1 From** *Please print and press hard.*

Date **6/15/23**

Sender's FedEx Account Number  SENDER'S FED 4312-0368-5

Sender's Name **Kim Hewlett**   Phone ( **404** ) **577-8111**

Company **ERIC J HERTZ PC**

Address **8300 DUNWOODY PL STE 210**

Dept./Floor/Suite/Room

City **ATLANTA**   State **GA**   ZIP **30350-3323**

**2 Your Internal Billing Reference**
First 24 characters will appear on invoice.   **Graham N**   OPTIONAL

**3 To**
Recipient's Name **Sheriff Richard Roundtree**   Phone ( )

Company **Sheriff's office**

Address **Law Enforcement Center**
We cannot deliver to P.O. boxes or P.O. ZIP codes.
Dept./Floor/Suite/Room

Hold Weekday
FedEx location address
REQUIRED. **NOT available for** FedEx First Overnight.

Address **400 Walton Way**
Use this line for the HOLD location address or for continuation of your shipping address.

Hold Saturday
FedEx location address
REQUIRED. **Available ONLY for** FedEx Priority Overnight and FedEx 2Day to select locations.

City **Augusta**   State **GA**   ZIP **30901**

**0140421127**

**4 Express Package Service**   *To most locations.*

Packages up to 150 lbs.
For packages over 150 lbs., use the FedEx Express Freight US Airbill.

**Next Business Day**

☐ **FedEx First Overnight**
Earliest next business morning delivery to select locations. Friday shipments will be delivered on Monday unless Saturday Delivery is selected.

☐ **FedEx Priority Overnight**
Next business morning.* Friday Shipments will be delivered on Monday unless Saturday Delivery is selected.

☐ **FedEx Standard Overnight**
Next business afternoon.*
Saturday Delivery NOT available.

**2 or 3 Business Days**

☐ **FedEx 2Day A.M.**
Second business morning.*
Saturday Delivery NOT available.

☐ **FedEx 2Day**
Second business afternoon.* Thursday shipments will be delivered on Monday unless Saturday Delivery is selected.

☐ **FedEx Express Saver**
Third business day.*
Saturday Delivery NOT available.

**5 Packaging**   *Declared value limit $500.*

☐ FedEx Envelope*   ☐ FedEx Pak*   ☐ FedEx Box   ☐ FedEx Tube   ☐ Other

**6 Special Handling and Delivery Signature Options**   Fees may apply. See the FedEx Service Guide.

☐ **Saturday Delivery**
**NOT available for** FedEx Standard Overnight, FedEx 2Day A.M., or FedEx Express Saver.

☐ **No Signature Required**
Package may be left without obtaining a signature for delivery.

☐ **Direct Signature**
Someone at recipient's address may sign for delivery.

☐ **Indirect Signature**
If no one is available at recipient's address, someone at a neighboring address may sign for delivery. For residential deliveries only.

**Does this shipment contain dangerous goods?**
One box must be checked.

☐ No   ☐ Yes As per associated Shipper's Declaration.   ☐ Yes Shipper's Declaration not required.   ☐ Dry Ice Dry Ice, 9, UN 1845 _____ x _____ kg

☐ Cargo Aircraft Only

Restrictions apply for dangerous goods — see the current FedEx Service Guide.

**7 Payment**   *Bill to:*

Sender Acct. No. in Section 1 will be billed.
Enter FedEx Acct. No. below
☐ Recipient   ☐ Third Party

This airbill can be used only when billing to a FedEx account number. For cash, check, or credit card transactions, please go to a staffed shipping location.

FedEx Acct. No.

Total Packages   Total Weight   Total Declared Value†

_____   _____ lbs.   $ _____ .00

†Our liability is limited to US$100 unless you declare a higher value. See back for details. By using this airbill you agree to the service conditions on the back of this airbill and in the current FedEx Service Guide, including terms that limit our liability.

Rev. Date 4/22 • Part #163134 • ©1994–2022 FedEx • PRINTED IN U.S.A.

**611**

**Ship it. Track it. Pay for it. All online.**
Go to **fedex.com.**



PULL AND RETAIN THIS COPY BEFORE AFFIXING TO THE PACKAGE. NO POUCH NEEDED.

# Terms and Conditions Summary

*For the current FedEx Service Guide, which contains the complete Terms and Conditions, go to **fedex.com**.*

**Definitions**   On this Airbill, "we," "our," "us," and "FedEx" refer to Federal Express Corporation, its employees, and agents. "You" and "your" refer to the sender, its employees, and agents.

**Agreement To Terms**   By giving us your package to deliver, you agree to all the terms on this Airbill and in the current FedEx Service Guide, which is available at **fedex.com** or at a FedEx location. You also agree to those terms on behalf of any third party with an interest in the package. If there is a conflict between the current FedEx Service Guide and this Airbill, the current FedEx Service Guide will control. No one is authorized to change the terms of our Agreement.

**Responsibility For Packaging And Completing Airbill**
You are responsible for adequately packaging your goods and properly filling out this Airbill. If you omit the number of packages and/or weight per package, our billing will be based on our best estimate of the number of packages we received and/or an estimated "default" weight per package as determined by us.

**Responsibility For Payment**   Even if you give us different payment instructions, you will always be primarily responsible for all delivery costs, as well as any cost we incur in either returning your package to you or warehousing it pending disposition. All shipments originating in the U.S. and paid for with cash, check, debit or credit card must be tendered at a staffed shipping location, and will be charged FedEx Retail Rates.

**Limitations On Our Liability And Liabilities Not Assumed**

- Unless a higher value is declared and paid for, our liability for each package is limited to US$100. You may pay an additional charge for each additional US$100 of declared value. The declared value does not constitute, nor do we provide, cargo liability insurance.

- In any event, we will not be liable for any damage, whether direct, incidental, special, or consequential, in excess of the declared value of a shipment, whether or not FedEx had knowledge that such damages might be incurred, including but not limited to loss of income or profits.

- We won't be liable:

  - for your acts or omissions, including but not limited to improper or insufficient packing, securing, marking, or addressing, or those of the recipient or anyone else with an interest in the package.

  - if you or the recipient violates any of the terms of our Agreement.

  - for loss of or damage to shipments of prohibited items.

  - for loss, damage, or delay caused by events we cannot control, including but not limited to acts of God, perils of the air, weather conditions, acts of public enemies, war, strikes, civil commotions, or acts of public authorities with actual or apparent authority.

**Declared Value Limits**

- The maximum declared value allowed for a FedEx Envelope or FedEx Pak shipment is US$500.

- For other shipments, the maximum declared value allowed is US$50,000 per package, unless your package contains items of extraordinary value, in which case the maximum declared value allowed is US$1,000 per package.

- Items of extraordinary value include shipments containing such items as artwork, jewelry, furs, precious metals, negotiable instruments, and other items listed in the current FedEx Service Guide.

- You may send more than one package on this Airbill and fill in the total declared value for all packages, not to exceed the US$500, US$1,000, or US$50,000 per package limit described above. (Example: 5 packages can have a total declared value of up to US$250,000.) In that case, our liability is limited to the actual value of the package(s) lost or damaged, but may not exceed the maximum allowable declared value(s) or the total declared value, whichever is less. You are responsible for proving the actual loss or damage.

**Filing A Claim**   YOU MUST MAKE ALL CLAIMS IN WRITING or online at **fedex.com** and notify us of your claim within strict time limits set out in the current FedEx Service Guide.

You may call our Customer Service department at 1.800.GoFedEx 1.800.463.3339 to report a claim; however, you must still file a timely written claim. We aren't obligated to act on any claim until you have paid all transportation charges, and you may not deduct the amount of your claim from those charges.

If the recipient accepts your package without noting any damage on the delivery record, we will assume the package was delivered in good condition. For us to process your claim, you must make the original shipping cartons and packing available for inspection.

**Right To Inspect**   We may, at our option, open and inspect your packages before or after you give them to us to deliver.

**Right Of Rejection**   We reserve the right to reject a shipment when such shipment would be likely to cause delay or damage to other shipments, equipment, or personnel; or if the shipment is prohibited by law; or if the shipment would violate any terms of our Airbill or the current FedEx Service Guide.

**C.O.D. Services**   C.O.D. SERVICE IS NOT AVAILABLE WITH THIS AIRBILL. If C.O.D. Service is required, please use a FedEx C.O.D. Airbill.

**Air Transportation Tax Included**   A federal excise tax when required by the Internal Revenue Code on the air transportation portion of this service, if any, is paid by us.

**Money-Back Guarantee**   In the event of untimely delivery, FedEx will, at your request and with some limitations, refund or credit all transportation charges. See the current FedEx Service Guide for more information.

**FedEx Express**

Package US Airbill

FedEx Tracking Number **8180 5509 1314**

Form ID No. **0215**

MUR3

**Sender's Copy**

**1  From** *Please print and press hard.*

Date **6/15/23**

Sender's FedEx Account Number    SENDER'S FED **4312-0368-5**

Sender's Name **Kim Hewlett**    Phone ( **404** ) **577-8111**

Company **ERIC J HERTZ PC**

Address **8300 DUNWOODY PL STE 210**

Dept./Floor/Suite/Room

City **ATLANTA**    State **GA**    ZIP **30350-3323**

**2  Your Internal Billing Reference**
First 24 characters will appear on invoice.    **Graham.N** OPTIONAL

**3  To**

Recipient's Name **Clerk of Augusta-Richmond County Comm. Office**    Phone ( )

Company **Augusta Commission Office**

Address **535 Telfair St.**
We cannot deliver to P.O. boxes or P.O. ZIP codes.    Dept./Floor/Suite/Room

Address **Suite 220**
Use this line for the HOLD location address or for continuation of your shipping address.

City **Augusta**    State **GA**    ZIP **30901**

**0140421127**

**Hold Weekday**
FedEx location address REQUIRED. **NOT available for** FedEx First Overnight.

**Hold Saturday**
FedEx location address REQUIRED. **Available ONLY for** FedEx Priority Overnight and FedEx 2Day to select locations.

**4  Express Package Service**    *To most locations.*

*Packages up to 150 lbs.*
*For packages over 150 lbs., use the FedEx Express Freight US Airbill.*

**Next Business Day**

☐ FedEx First Overnight
Earliest next business morning delivery to select locations. Friday shipments will be delivered on Monday unless Saturday Delivery is selected.

☐ FedEx Priority Overnight
Next business morning.* Friday shipments will be delivered on Monday unless Saturday Delivery is selected.

☑ FedEx Standard Overnight
Next business afternoon.*
Saturday Delivery NOT available.

**2 or 3 Business Days**

☐ FedEx 2Day A.M.
Second business morning.*
Saturday Delivery NOT available.

☐ FedEx 2Day
Second business afternoon.* Thursday shipments will be delivered on Monday unless Saturday Delivery is selected.

☐ FedEx Express Saver
Third business day.*
Saturday Delivery NOT available.

**5  Packaging**    *Declared value limit $500.*

☑ FedEx Envelope*    ☐ FedEx Pak*    ☐ FedEx Box    ☐ FedEx Tube    ☐ Other

**6  Special Handling and Delivery Signature Options**    Fees may apply. See the FedEx Service Guide.

☐ Saturday Delivery
**NOT available for** FedEx Standard Overnight, FedEx 2Day A.M., or FedEx Express Saver.

☐ No Signature Required
Package may be left without obtaining a signature for delivery.

☑ Direct Signature
Someone at recipient's address may sign for delivery.

☐ Indirect Signature
If no one is available at recipient's address, someone at a neighboring address may sign for delivery. For residential deliveries only.

**Does this shipment contain dangerous goods?**
One box must be checked.

☑ No    ☐ Yes As per associated Shipper's Declaration.    ☐ Yes Shipper's Declaration not required.    ☐ Dry Ice Dry Ice, 9, UN 1845 ___ x ___ kg

☐ Cargo Aircraft Only

Restrictions apply for dangerous goods — see the current FedEx Service Guide.

**7  Payment**    *Bill to:*

☑ Sender
Acct. No. in Section 1 will be billed.    Enter FedEx Acct. No. below

☐ Recipient    ☐ Third Party

FedEx Acct. No.

This airbill can be used only when billing to a FedEx account number. For cash, check, or credit card transactions, please go to a staffed shipping location.

Total Packages    Total Weight ___ lbs.    Total Declared Value† $ ___ .00

† Our liability is limited to US$100 unless you declare a higher value. See back for details. By using this airbill you agree to the service conditions on the back of this airbill and in the current FedEx Service Guide, including terms that limit our liability.

Rev. Date 4/22 • Part #163134 • ©1994-2022 FedEx • PRINTED IN U.S.A.

**611**

Ship it. Track it. Pay for it. All online.
Go to fedex.com.

PULL AND RETAIN THIS COPY BEFORE AFFIXING TO THE PACKAGE. NO POUCH NEEDED.

# Terms and Conditions Summary

For the current FedEx Service Guide, which contains the complete Terms and Conditions, go to **fedex.com**.

**Definitions**   On this Airbill, "we," "our," "us," and "FedEx" refer to Federal Express Corporation, its employees, and agents. "You" and "your" refer to the sender, its employees, and agents.

**Agreement To Terms**   By giving us your package to deliver, you agree to all the terms on this Airbill and in the current FedEx Service Guide, which is available at **fedex.com** or at a FedEx location. You also agree to those terms on behalf of any third party with an interest in the package. If there is a conflict between the current FedEx Service Guide and this Airbill, the current FedEx Service Guide will control. No one is authorized to change the terms of our Agreement.

**Responsibility For Packaging And Completing Airbill**
You are responsible for adequately packaging your goods and properly filling out this Airbill. If you omit the number of packages and/or weight per package, our billing will be based on our best estimate of the number of packages we received and/or an estimated "default" weight per package as determined by us.

**Responsibility For Payment**   Even if you give us different payment instructions, you will always be primarily responsible for all delivery costs, as well as any cost we incur in either returning your package to you or warehousing it pending disposition. All shipments originating in the U.S. and paid for with cash, check, debit or credit card must be tendered at a staffed shipping location, and will be charged FedEx Retail Rates.

**Limitations On Our Liability And Liabilities Not Assumed**

- Unless a higher value is declared and paid for, our liability for each package is limited to US$100. You may pay an additional charge for each additional US$100 of declared value. The declared value does not constitute, nor do we provide, cargo liability insurance.

- In any event, we will not be liable for any damage, whether direct, incidental, special, or consequential, in excess of the declared value of a shipment, whether or not FedEx had knowledge that such damages might be incurred, including but not limited to loss of income or profits.

- We won't be liable:

  - for your acts or omissions, including but not limited to improper or insufficient packing, securing, marking, or addressing, or those of the recipient or anyone else with an interest in the package.

  - if you or the recipient violates any of the terms of our Agreement.

  - for loss of or damage to shipments of prohibited items.

  - for loss, damage, or delay caused by events we cannot control, including but not limited to acts of God, perils of the air, weather conditions, acts of public enemies, war, strikes, civil commotions, or acts of public authorities with actual or apparent authority.

**Declared Value Limits**

- The maximum declared value allowed for a FedEx Envelope or FedEx Pak shipment is US$500.

- For other shipments, the maximum declared value allowed is US$50,000 per package, unless your package contains items of extraordinary value, in which case the maximum declared value allowed is US$1,000 per package.

- Items of extraordinary value include shipments containing such items as artwork, jewelry, furs, precious metals, negotiable instruments, and other items listed in the current FedEx Service Guide.

- You may send more than one package on this Airbill and fill in the total declared value for all packages, not to exceed the US$500, US$1,000, or US$50,000 per package limit described above. (Example: 5 packages can have a total declared value of up to US$250,000.) In that case, our liability is limited to the actual value of the package(s) lost or damaged, but may not exceed the maximum allowable declared value(s) or the total declared value, whichever is less. You are responsible for proving the actual loss or damage.

**Filing A Claim**   YOU MUST MAKE ALL CLAIMS IN WRITING or online at **fedex.com** and notify us of your claim within strict time limits set out in the current FedEx Service Guide.

You may call our Customer Service department at 1.800.GoFedEx 1.800.463.3339 to report a claim; however, you must still file a timely written claim. We aren't obligated to act on any claim until you have paid all transportation charges, and you may not deduct the amount of your claim from those charges.

If the recipient accepts your package without noting any damage on the delivery record, we will assume the package was delivered in good condition. For us to process your claim, you must make the original shipping cartons and packing available for inspection.

**Right To Inspect**   We may, at our option, open and inspect your packages before or after you give them to us to deliver.

**Right Of Rejection**   We reserve the right to reject a shipment when such shipment would be likely to cause delay or damage to other shipments, equipment, or personnel; or if the shipment is prohibited by law; or if the shipment would violate any terms of our Airbill or the current FedEx Service Guide.

**C.O.D. Services**   C.O.D. SERVICE IS NOT AVAILABLE WITH THIS AIRBILL. If C.O.D. Service is required, please use a FedEx C.O.D. Airbill.

**Air Transportation Tax Included**   A federal excise tax when required by the Internal Revenue Code on the air transportation portion of this service, if any, is paid by us.

**Money-Back Guarantee**   In the event of untimely delivery, FedEx will, at your request and with some limitations, refund or credit all transportation charges. See the current FedEx Service Guide for more information.

Part 163134 • Rev. Date 4/22

**FedEx Express**

Package US Airbill

FedEx Tracking Number  **8180 5509 1277**

Form ID No.  **0215**    **Sender's Copy**

**1  From** *Please print and press hard.*

Date **6/15/23**

Sender's FedEx Account Number    SENDER'S FEDEX  **4312-0368-5**

Sender's Name **Kim Hewlett**    Phone ( **404** ) **577-8111**

Company **ERIC J HERTZ PC**

Address **8300 DUNWOODY PL STE 210**    Dept./Floor/Suite/Room

City **ATLANTA**    State **GA**    ZIP **30350-3323**

**2  Your Internal Billing Reference**
First 24 characters will appear on invoice.    **Graham N**

**3  To**

Recipient's Name **Mayor Garnett Johnson**    Phone ( )

Company **Augusta Richmond County Board of Comm.**

Address **535 Telfair St.**
We cannot deliver to P.O. boxes or P.O. ZIP codes.    Dept./Floor/Suite/Room

Address **Suite 220**
Use this line for the HOLD location address or for continuation of your shipping address.

City **Augusta**    State **GA**    ZIP **30901**

**Hold Weekday**
FedEx location address
REQUIRED. NOT available for
FedEx First Overnight.

**Hold Saturday**
FedEx location address
REQUIRED. Available ONLY for
FedEx Priority Overnight and
FedEx 2Day to select locations.

**0140421127**

**4  Express Package Service**    *To most locations.*

Packages up to 150 lbs.
For packages over 150 lbs., use the
FedEx Express Freight US Airbill.

**Next Business Day**

☐ FedEx First Overnight
Earliest next business morning delivery to select locations. Friday shipments will be delivered on Monday unless Saturday Delivery is selected.

☐ FedEx Priority Overnight
Next business morning.* Friday shipments will be delivered on Monday unless Saturday Delivery is selected.

☒ FedEx Standard Overnight
Next business afternoon.*
Saturday Delivery NOT available.

**2 or 3 Business Days**

☐ FedEx 2Day A.M.
Second business morning.*
Saturday Delivery NOT available.

☐ FedEx 2Day
Second business afternoon.* Thursday shipments will be delivered on Monday unless Saturday Delivery is selected.

☐ FedEx Express Saver
Third business day.*
Saturday Delivery NOT available.

**5  Packaging**    *Declared value limit $500.*

☒ FedEx Envelope*    ☐ FedEx Pak*    ☐ FedEx Box    ☐ FedEx Tube    ☐ Other

**6  Special Handling and Delivery Signature Options**    Fees may apply. See the FedEx Service Guide.

☐ Saturday Delivery
NOT available for FedEx Standard Overnight, FedEx 2Day A.M., or FedEx Express Saver.

☐ No Signature Required
Package may be left without obtaining a signature for delivery.

☒ Direct Signature
Someone at recipient's address may sign for delivery.

☐ Indirect Signature
If no one is available at recipient's address, someone at a neighboring address may sign for delivery. For residential deliveries only.

**Does this shipment contain dangerous goods?**
— One box must be checked. —

☒ No

☐ Yes
As per associated Shipper's Declaration.

☐ Yes
Shipper's Declaration not required.

☐ Dry Ice
Dry Ice, 9, UN 1845 ___ x ___ kg

☐ Cargo Aircraft Only

Restrictions apply for dangerous goods—see the current FedEx Service Guide.

**7  Payment**    *Bill to:*

☒ Sender
Acct. No. in Section 1 will be billed.

Enter FedEx Acct. No. below

☐ Recipient    ☐ Third Party

FedEx Acct. No.

Total Packages    Total Weight ___ lbs.    Total Declared Value† $ ___ .00

†Our liability is limited to US$100 unless you declare a higher value. See back for details. By using this airbill you agree to the service conditions on the back of this airbill and in the current FedEx Service Guide, including terms that limit our liability.

Rev. Date 4/22 • Part #163134 • ©1994–2022 FedEx • PRINTED IN U.S.A.

**611**

PULL AND RETAIN THIS COPY BEFORE AFFIXING TO THE PACKAGE. NO POUCH NEEDED.



Ship it. Track it. Pay for it. All online.
Go to **fedex.com**.

# Terms and Conditions Summary

*For the current FedEx Service Guide, which contains the complete Terms and Conditions, go to **fedex.com**.*

**Definitions** On this Airbill, "we," "our," "us," and "FedEx" refer to Federal Express Corporation, its employees, and agents. "You" and "your" refer to the sender, its employees, and agents.

**Agreement To Terms** By giving us your package to deliver, you agree to all the terms on this Airbill and in the current FedEx Service Guide, which is available at **fedex.com** or at a FedEx location. You also agree to those terms on behalf of any third party with an interest in the package. If there is a conflict between the current FedEx Service Guide and this Airbill, the current FedEx Service Guide will control. No one is authorized to change the terms of our Agreement.

**Responsibility For Packaging And Completing Airbill** You are responsible for adequately packaging your goods and properly filing out this Airbill. If you omit the number of packages and/or weight per package, our billing will be based on our best estimate of the number of packages we received and/or an estimated "default" weight per package as determined by us.

**Responsibility For Payment** Even if you give us different payment instructions, you will always be primarily responsible for all delivery costs, as well as any cost we incur in either returning your package to you or warehousing it pending disposition. All shipments originating in the U.S. and paid for with cash, check, debit or credit card must be tendered at a staffed shipping location, and will be charged FedEx Retail Rates.

**Limitations On Our Liability And Liabilities Not Assumed**

- Unless a higher value is declared and paid for, our liability for each package is limited to US$100. You may pay an additional charge for each additional US$100 of declared value. The declared value does not constitute, nor do we provide, cargo liability insurance.

- In any event, we will not be liable for any damage, whether direct, incidental, special, or consequential, in excess of the declared value of a shipment, whether or not FedEx had knowledge that such damages might be incurred, including but not limited to loss of income or profits.

- We won't be liable:

  - for your acts or omissions, including but not limited to improper or insufficient packing, securing, marking, or addressing, or those of the recipient or anyone else with an interest in the package.

  - if you or the recipient violates any of the terms of our Agreement.

  - for loss of or damage to shipments of prohibited items.

  - for loss, damage, or delay caused by events we cannot control, including but not limited to acts of God, perils of the air, weather conditions, acts of public enemies, war, strikes, civil commotions, or acts of public authorities with actual or apparent authority.

**Declared Value Limits**

- The maximum declared value allowed for a FedEx Envelope or FedEx Pak shipment is US$500.

- For other shipments, the maximum declared value allowed is US$50,000 per package, unless your package contains items of extraordinary value, in which case the maximum declared value allowed is US$1,000 per package.

- Items of extraordinary value include shipments containing such items as artwork, jewelry, furs, precious metals, negotiable instruments, and other items listed in the current FedEx Service Guide.

- You may send more than one package on this Airbill and fill in the total declared value for all packages, not to exceed the US$500, US$1,000, or US$50,000 per package limit described above. (Example: 5 packages can have a total declared value of up to US$250,000.) In that case, our liability is limited to the actual value of the package(s) lost or damaged, but may not exceed the maximum allowable declared value(s) or the total declared value, whichever is less. You are responsible for proving the actual loss or damage.

**Filing A Claim** YOU MUST MAKE ALL CLAIMS IN WRITING or online at **fedex.com** and notify us of your claim within strict time limits set out in the current FedEx Service Guide.

You may call our Customer Service department at 1.800.GoFedEx 1.800.463.3339 to report a claim; however, you must still file a timely written claim. We aren't obligated to act on any claim until you have paid all transportation charges, and you may not deduct the amount of your claim from those charges.

If the recipient accepts your package without noting any damage on the delivery record, we will assume the package was delivered in good condition. For us to process your claim, you must make the original shipping cartons and packing available for inspection.

**Right To Inspect** We may, at our option, open and inspect your packages before or after you give them to us to deliver.

**Right Of Rejection** We reserve the right to reject a shipment when such shipment would be likely to cause delay or damage to other shipments, equipment, or personnel; or if the shipment is prohibited by law; or if the shipment would violate any terms of our Airbill or the current FedEx Service Guide.

**C.O.D. Services** C.O.D. SERVICE IS NOT AVAILABLE WITH THIS AIRBILL. If C.O.D. Service is required, please use a FedEx C.O.D. Airbill.

**Air Transportation Tax Included** A federal excise tax when required by the Internal Revenue Code on the air transportation portion of this service, if any, is paid by us.

**Money-Back Guarantee** In the event of untimely delivery, FedEx will, at your request and with some limitations, refund or credit all transportation charges. See the current FedEx Service Guide for more information.

Part 163134 • Rev. Date 4/22

# FedEx
**Express**

**Package US Airbill**

FedEx Tracking Number: 8180 5509 1288

Form ID No. 0215    **Sender's Copy**

MUR3

## 1 From *Please print and press hard.*

Date: 6/15/23

Sender's FedEx Account Number: 4312-0368-5

Sender's Name: Kim Hewlett    Phone: (404) 577-8111

Company: ERIC J HERTZ PC

Address: 8300 DUNWOODY PL STE 210

City: ATLANTA    State: GA    ZIP: 30350-3323

## 2 Your Internal Billing Reference
*First 24 characters will appear on invoice.*

Graham N

## 3 To

Recipient's Name: Mayor Garnett Johnson    Phone: (    )

Company: Augusta Mayor's office

Address: 535 Telfair St.

*We cannot deliver to P.O. boxes or P.O. ZIP codes.*

Address: Suite 200
*Use this line for the HOLD location address or for continuation of your shipping address.*

City: Augusta    State: GA    ZIP: 30901

**Hold Weekday**
FedEx location address REQUIRED. NOT available for FedEx First Overnight.

**Hold Saturday**
FedEx location address REQUIRED. Available ONLY for FedEx Priority Overnight and FedEx 2Day to select locations.

0140421127

## 4 Express Package Service *To most locations.*

Packages up to 150 lbs.
*For packages over 150 lbs., use the FedEx Express Freight US Airbill.*

**Next Business Day**

☐ FedEx First Overnight
Earliest next business morning delivery to select locations. Friday shipments will be delivered on Monday unless Saturday is selected.

☐ FedEx Priority Overnight
Next business morning.* Friday shipments will be delivered on Monday unless Saturday Delivery is selected.

☒ FedEx Standard Overnight
Next business afternoon.*
Saturday Delivery NOT available.

**2 or 3 Business Days**

☐ FedEx 2Day A.M.
Second business morning.*
Saturday Delivery NOT available.

☐ FedEx 2Day
Second business afternoon.* Thursday shipments will be delivered on Monday unless Saturday Delivery is selected.

☐ FedEx Express Saver
Third business day.*
Saturday Delivery NOT available.

## 5 Packaging *Declared value limit $500.*

☒ FedEx Envelope*    ☐ FedEx Pak*    ☐ FedEx Box    ☐ FedEx Tube    ☐ Other

## 6 Special Handling and Delivery Signature Options *Fees may apply. See the FedEx Service Guide.*

☐ Saturday Delivery
NOT available for FedEx Standard Overnight, FedEx 2Day A.M., or FedEx Express Saver.

☐ No Signature Required
Package may be left without obtaining a signature for delivery.

☒ Direct Signature
Someone at recipient's address may sign for delivery.

☐ Indirect Signature
If no one is available at recipient's address, someone at a neighboring address may sign for delivery. For residential deliveries only.

**Does this shipment contain dangerous goods?**
*One box must be checked.*

☒ No    ☐ Yes As per associated Shipper's Declaration.    ☐ Yes Shipper's Declaration not required.    ☐ Dry Ice Dry ice, 9, UN 1845 ___ x ___ kg

☐ Cargo Aircraft Only

*Restrictions apply for dangerous goods — see the current FedEx Service Guide.*

## 7 Payment *Bill to:*

☒ Sender Acct. No. in Section 1 will be billed.

Enter FedEx Acct. No. below
☐ Recipient    ☐ Third Party

FedEx Acct. No.

Total Packages ___    Total Weight ___ lbs.    Total Declared Value† $ ___ .00

†Our liability is limited to US$100 unless you declare a higher value. See back for details. By using this airbill you agree to the service conditions on the back of this airbill and in the current FedEx Service Guide, including terms that limit our liability.

Rev. Date 4/22 • Part #163134 • ©1994–2022 FedEx • PRINTED IN U.S.A.

611

PULL AND RETAIN THIS COPY BEFORE AFFIXING TO THE PACKAGE. NO POUCH NEEDED.



**Ship it. Track it. Pay for it. All online.**
Go to **fedex.com**.

# Terms and Conditions Summary

*For the current FedEx Service Guide, which contains the complete Terms and Conditions, go to **fedex.com**.*

**Definitions**  On this Airbill, "we," "our," "us," and "FedEx" refer to Federal Express Corporation, its employees, and agents. "You" and "your" refer to the sender, its employees, and agents.

**Agreement To Terms**  By giving us your package to deliver, you agree to all the terms on this Airbill and in the current FedEx Service Guide, which is available at **fedex.com** or at a FedEx location. You also agree to those terms on behalf of any third party with an interest in the package. If there is a conflict between the current FedEx Service Guide and this Airbill, the current FedEx Service Guide will control. No one is authorized to change the terms of our Agreement.

**Responsibility For Packaging And Completing Airbill**  You are responsible for adequately packaging your goods and properly filling out this Airbill. If you omit the number of packages and/or weight per package, our billing will be based on our best estimate of the number of packages we received and/or an estimated "default" weight per package as determined by us.

**Responsibility For Payment**  Even if you give us different payment instructions, you will always be primarily responsible for all delivery costs, as well as any cost we incur in either returning your package to you or warehousing it pending disposition. All shipments originating in the U.S. and paid for with cash, check, debit or credit card must be tendered at a staffed shipping location, and will be charged FedEx Retail Rates.

## Limitations On Our Liability And Liabilities Not Assumed

- Unless a higher value is declared and paid for, our liability for each package is limited to US$100. You may pay an additional charge for each additional US$100 of declared value. The declared value does not constitute, nor do we provide, cargo liability insurance.

- In any event, we will not be liable for any damage, whether direct, incidental, special, or consequential, in excess of the declared value of a shipment, whether or not FedEx had knowledge that such damages might be incurred, including but not limited to loss of income or profits.

- We won't be liable:

  - for your acts or omissions, including but not limited to improper or insufficient packing, securing, marking, or addressing, or those of the recipient or anyone else with an interest in the package.

  - if you or the recipient violates any of the terms of our Agreement.

  - for loss of or damage to shipments of prohibited items.

  - for loss, damage, or delay caused by events we cannot control, including but not limited to acts of God, perils of the air, weather conditions, acts of public enemies, war, strikes, civil commotions, or acts of public authorities with actual or apparent authority.

## Declared Value Limits

- The maximum declared value allowed for a FedEx Envelope or FedEx Pak shipment is US$500.

- For other shipments, the maximum declared value allowed is US$50,000 per package, unless your package contains items of extraordinary value, in which case the maximum declared value allowed is US$1,000 per package.

- Items of extraordinary value include shipments containing such items as artwork, jewelry, furs, precious metals, negotiable instruments, and other items listed in the current FedEx Service Guide.

- You may send more than one package on this Airbill and fill in the total declared value for all packages, not to exceed the US$500, US$1,000, or US$50,000 per package limit described above. (Example: 5 packages can have a total declared value of up to US$250,000.) In that case, our liability is limited to the actual value of the package(s) lost or damaged, but may not exceed the maximum allowable declared value(s) or the total declared value, whichever is less. You are responsible for proving the actual loss or damage.

**Filing A Claim**  YOU MUST MAKE ALL CLAIMS IN WRITING or online at **fedex.com** and notify us of your claim within strict time limits set out in the current FedEx Service Guide.

You may call our Customer Service department at 1.800.GoFedEx 1.800.463.3339 to report a claim; however, you must still file a timely written claim. We aren't obligated to act on any claim until you have paid all transportation charges, and you may not deduct the amount of your claim from those charges.

If the recipient accepts your package without noting any damage on the delivery record, we will assume the package was delivered in good condition. For us to process your claim, you must make the original shipping cartons and packing available for inspection.

**Right To Inspect**  We may, at our option, open and inspect your packages before or after you give them to us to deliver.

**Right Of Rejection**  We reserve the right to reject a shipment when such shipment would be likely to cause delay or damage to other shipments, equipment, or personnel; or if the shipment is prohibited by law; or if the shipment would violate any terms of our Airbill or the current FedEx Service Guide.

**C.O.D. Services**  C.O.D. SERVICE IS NOT AVAILABLE WITH THIS AIRBILL. If C.O.D. Service is required, please use a FedEx C.O.D. Airbill.

**Air Transportation Tax Included**  A federal excise tax when required by the Internal Revenue Code on the air transportation portion of this service, if any, is paid by us.

**Money-Back Guarantee**  In the event of untimely delivery, FedEx will, at your request and with some limitations, refund or credit all transportation charges. See the current FedEx Service Guide for more information.